# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                        :

                                          :      Case No. 17-cr-00684-ECR

v.                                              :

Emanuel "Book" Richardson               :

       Defendant.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SENTENCING MEMORANDUM
## ON BEHALF OF EMANUEL RICHARDSON

**MORDOCK BARBER, LLC**
Craig J. Mordock
7611 Maple Street
New Orleans, LA 70118
*Attornes for Defendant Emanuel Richardson*

1

# TABLE OF CONTENTS

BACKGROUND                                                                                                    4

APPLICABLE LAW                                                                                            7

THE APPROPRIATE SENTENCE                                                                    9

   I.    Consideration of the 18 U.S.C. § 3553(a) Factors Merits a Lenient Sentence.   9

   A.    Emanuel Richardson's History And Character                                    9

   B.    The Nature And Circumstances Of The Offense.                             10

   C.    A Non-Custodial Sentence is Appropriate in Order to Avoid Unwarranted Disparities with Comparable Cases.                                                                            11

   D.    A Non-Custodial Sentence is Sufficient to Deter Others                  12

CONCLUSION                                                                                                13

# TABLE OF AUTHORITIES

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)

*Blakely v. Washington,* 124 S. Ct. 2531 (2004)

*Gall v. United States*, 552 U.S. 38, 49 (2007)

*Rita v. United States*, 551 U.S. 338 (2007)

*United States v. Booker*, 125 S. Ct. 738 (2005)

*United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012)


**Rules**

18 U.S.C. § 3553(a); 18 U.S.C. § 3553(a)(4)

18 U.S.C. § 3553(b)(1); 18 U.S.C. § 3742(e)

18 U.S.C. § 3582; 18 U.S.C. § 3661

U.S.S.G.§5Hl;

**INTRODUCTION**

Mr. Richardson respectfully submits this memorandum in advance of his May 30, 2019 sentencing, to provide information to aid the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005). Mr. Richardson respectfully requests that this Honorable Court impose a non-custodial sentence in this case. For the following reasons, an appropriate sentence of probation would be sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

**BACKGROUND**

Emanuel Richardson was born in New York City in 1972 starting his early childhood in a difficult environment without much stability. During this time, he suffered from physical and emotional abuse from his young mother. (PSR ¶106). Throughout Mr. Richardson's life, his biological father was not present and Mr. Richardson looked to his coaches and friends as a way of filling the gap of despair from his unstable childhood. Mr. Richardson's mother largely relied on public assistance growing up. (PSR ¶107). At the age of 5, Mr. Richardson's mother became romantically involved with Eugene Otis Richardson.  This relationship helped to provide some financial and emotional stability in his life. Eugene Richardson was not Emanuel Richardson's biological father but at some point in the relationship, Mr. Richardson changed to his father's surname, which was a significant event in his life.

During Emanuel Richardson's sophomore year of high school, Eugene Richardson left the family and went to Bermuda. He subsequently died in Bermuda and Emanuel Richardson never saw his step-father again. After this period, Mr. Richardson's mother who had nothing but

a seventh-grade education took a series of odd jobs in an effort to support the family. During this difficult time, Mr. Richardson, slept on the couches of friends and relatives.

Mr. Richardson excelled in basketball at St. Raymond's High School as a point guard during what could be considered the golden age of New York City basketball. Basketball was a way out. Basketball was his life. Mr. Richardson earned a scholarship to Florida Atlantic University and then transferred to Pitt-Johnstown where he earned a degree in Business Administration. After college, Mr. Richardson worked in banking for JP Morgan Chase but always thought his real calling was basketball. He left the banking industry to become a substitute high school and basketball coach at elementary schools in Manhattan and the Bronx. (PSR ¶107) Coaching and being a mentor to youth had become his calling and something Mr. Richardson is passionate about to this day. He then became an assistant coach at Marist College from 2004-2005 before taking over the New York Gauchos, a summer basketball program. (*See* Ian Begley "He's Booked." NY Daily News, August 21 2007 available at https://www.nydailynews.com/sports/high-school/booked-article-1.239342.) Mr. Richardson brought unprecedented success to the Gauchos program. In 3 years as director and head coach of the Gauchos program, he sent 7 players to Division 1 basketball schools.

In 2007, Mr. Richardson left New York City and the Gauchos to become an Assistant Coach at Xavier University in Cincinnati. He worked at Xavier for two years under head coach Sean Miller. In 2009, Miller accepted the Head Coaching job at the University of Arizona and took Mr. Richardson with him as his lead assistant coach and top recruiter. During Mr. Richardson's eight-year tenure at the University of Arizona were regarded as one of the top teams of the country. Mr. Richardson had truly found his calling in life to help young men excel on the court and in the classroom. As an assistant coach, yes he was able to guide them in the

field of play but also help to further be a leader and guide them in the ups and downs of college life and preparing them with life skills after basketball.

As a result of his arrest, Mr. Richardson was placed on leave and then fired by the University of Arizona in January of 2018. Though presently caring for his teenage son, E.J., Mr. Richardson's days largely revolve around residing in Tucson and coaching and training athletes under the age of 17. The national publicity derived from this case has resulted in Mr. Richardson's reputation being destroyed and has left him to draw on savings in order to meet monthly financial obligations.  His wife, Erin, has returned to New York City for employment so the family can receive health insurance. As evidenced by his Pre-Sentence Investigation Report, Mr. Richardson and his wife do not generate enough to meet their monthly financial obligations. (PSR ¶130)

Mr. Richardson pled guilty to conspiracy to commit bribery, in exchange for "directing basketball players to retain certain…advisors," (Plea Agreement pg 1.). Mr. Richardson fully admits his actions in this case were wrong and he regrets them. The two players that Mr. Richardson had discussed with the government's undercover agents, Rawle Alkins (at the time a player at Arizona) and recruit Jahvon Quinerly were never ruled ineligible to play college basketball. Alkins played the entire 2017-18 season for the Wildcats and is now playing basketball professionally. Quinerly played his freshman year in 2018-2019 at Villanova University. Mr. Richardson never recommended the co-defendants' firm to either player.

Mr. Richardson has no criminal history and has never been arrested, charged, prosecuted or convicted of any criminal matter, including misdemeanors, or juvenile adjudications. Mr. Richardson respectfully requests that the Court impose a probationary sentence.

## APPLICABLE LAW

It is duly noted the applicable law provided herein is consistent with the Sentencing Submission of the Mr. Richardson in this case.

In 2005, the Supreme Court ruled that its Sixth Amendment holdings in *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) apply to the Federal Sentencing Guidelines.  *Booker*, 125 S. Ct. at 756. Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 ("Sentencing Reform Act") that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. *Id*.  Accordingly, the Court severed and excised those provisions, making the Guidelines effectively advisory. *Id.* at 757.

The Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C. § 3553(a)(4) (Supp. 2004), but also permits the court to tailor the sentence in light of other statutory concerns. *See* 18 U.S.C. § 3553(a); *see also Booker*, 125 S. Ct. at 757.

District courts are required to properly calculate and consider the Guidelines when sentencing, even though the Guidelines are advisory in nature.  *Rita v. United States*, 551 U.S. 338 (2007) (stating that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range); *see also Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").  The Court, in determining the appropriate sentence in a particular case, therefore, must consider the properly calculated

Guideline range, the grounds for departure provided in the policy statements, and then the factors under 18 U.S.C. § 3553(a). *Rita*, 551 U.S. at 351.

Under *Booker*, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the following purposes:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). In addition, when determining a minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

. . .

(3)     the kinds of sentences available;

. . .

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Under 18 U.S.C. § 3661, no limitation shall be placed on the information concerning the background, character, and conduct of the defendant, which a court may receive and consider for the purpose of imposing an appropriate sentence. *See also United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012) (explaining that although a sentencing court is required to "correctly calculat[e] the applicable Guidelines range," that calculation falls "second" to "the bedrock" of federal sentencing, 18 U.S.C. § 3553(a), which "requires a court to take account of a defendant's character in imposing sentence."). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the Sentencing Guidelines, which list as not ordinarily relevant to sentencing, a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5Hl.

## THE APPROPRIATE SENTENCE

**I.      Consideration of the 18 U.S.C. § 3553(a) Factors Merit a Lenient Sentence.**

In light of the foregoing, and based on the following analysis of the applicable Section 3553(a) factors, Mr. Richardson respectfully submits that a probationary sentence is sufficient to comply with the statutory purposes of sentencing.

### A.  Emanuel Richardson's History and Character

Due to the enormous publicity surrounding this case, a negative picture of Mr. Richardson has emerged in the media and amongst college basketball fans. However, nothing could be further from the truth. Until his arrest on September 27, 2017, he was a success story. Mr. Richardson has come from humble beginnings and has worked hard to succeed. He had no male role models in his life and had an emotionally and physically abusive relationship with his young mother. He turned to athletics and excelled. Basketball fueled his path forward from

troubled beginnings. In 1998, Mr. Richardson became the first member of his family to graduate college earning a bachelor's degree in Business Administration. He worked in banking for two years but decided his passion was basketball and took the steps necessary to get to the highest levels of the profession.

Even more important than his success as a collegiate basketball coach, Mr. Richardson has been a loving son, father, husband and mentor.  Due to the absence of a father and strong male role model growing up, Mr. Richardson has done everything in his power to support his family. In short, family is Mr. Richardson's priority.

Mr. Richardson knows he has let people down because of mistakes. He feels remorse and shame for his actions but that has not stopped him from caring for his family. Additionally, he has taken a job training young athletes in Tucson. It does not pay very much but he has found it to be rewarding and has allowed him to get back to the basics. It is what made a career in basketball so appealing to him initially. Mr. Richardson was a humble and good man before his arrest on September 27, 2017 and he remains a humble and good man today.

### B.  The Nature and Circumstances Of The Offense.

Here, the conduct for which Mr. Richardson, as pled falls far outside the norm of bribery cases that typify the offense. Undeniably Mr. Richardson accepted money from the government under the guise of steering athletes to Christian Dawkins' fledgling sports management company but in doing so, the harm has been largely self-inflicted. The two student athletes that Mr. Richardson was supposed to refer to Dawkins' agency have never been suspended or ruled ineligible by the NCAA. Mr. Richardson never gave them the money and did not jeopardize their careers in basketball. Furthermore, he did not intend to harm the University of Arizona in any way. Indeed, the Government merely contends that his conduct ***exposed*** Arizona to potential

NCAA sanctions. However, despite this exposure his conduct caused, the NCAA has not imposed any monetary fines or other penalties upon Arizona or any other university involved in the case.  It is with great emphasis that the foregoing does not justify Mr. Richardson's actions. Clearly, at the time of the events giving rise to the charges, Mr. Richardson was aware his conduct was in violation of the NCAA rules. It is conduct he knew he should not have been engaging.   Therefore, he accepts the consequences of his actions and offers no excuse for conduct he realizes was wrong.

Given the unique nature and circumstances of this alleged offense, a "sentence other than imprisonment is generally appropriate" and we would ask the Your Honor recognize this benchmark and depart from the 3 month recommendation and impose a non-custodial period of supervision.

### C.   A Non-Custodial Sentence is Appropriate in Order to Avoid Unwarranted Disparities with Comparable Cases.

It would be fundamentally unfair to order Mr. Richardson to serve time in prison for a crime when many others who have engaged in identical conduct will go unpunished. Under Section § 3553(a), Mr. Richardson's sentence should reflect this dichotomy, considering he has always been a law abiding citizen.

It is important to note, the conduct at issue in this case is commonplace in college athletics. For decades, the vast majority of individuals who participated in the same conduct for which Mr. Richardson pled guilty did so without criminal sanction.  In fact, the government did not charge two other assistant coaches who are on camera accepting money in exchange for referring players to defendants Dawkins and Code. And, even in the few instances where

individuals have served custodial sentences, there is little doubt that those cases are the exception. In sum, the facilitation of payments to talented college athletes – which undoubtedly violates the NCAA's rules – is commonplace and has historically been considered a mere violation of NCAA rules, not a federal crime

It would be unjust for Mr. Richardson to be made an example through incarceration, when so many people who have engaged in the exact same type of conduct which has not subject to criminal sanction.

### D.   A Non-Custodial Sentence is Sufficient to Deter Others

The public humiliation associated with being indicted and pleading guilty to a crime, on a national stage is severe. The experience of seeing one's face and name pinned to the pages of the internet, newspapers and sports media outlets is extremely difficult, and is made even worse when one knows that his entire family will forever face the public embarrassment for years to come.

Emanuel Richardson's disrepute, perhaps more than any of the coaches in this case, has been eagerly reported by news writers around the world, especially those working in the sports industry.  Any sports fan who has so much paid attention to ESPN has received the message loud and clear—accepting money to refer student athletes to a sports agency or financial firm is more than just an NCAA violation. Mr. Richardson does not need to be incarcerated to get that message across. He has already lost his job, will never work in college basketball again and will never again be in the professional context positioned to make such choices.

Finally, while Mr. Richardson fully understands and does not attempt to trivialize the seriousness of this case, specific deterrence is achieved in this case with a probationary sentence. Mr. Richardson certainly does not pose a threat to the public, and evidences no prior criminal

history and, prior to this case, had never even been charged with a crime. There is no point of reference one could ever make to suggest that Mr. Richardson would have a propensity to be violent, or pose a threat to anyone in society.

This conviction is an aberration in a life that has otherwise been characterized by law-abiding behavior.  In his life, Mr. Richardson has held nothing but the greatest respect for the law and certainly never exhibited any traits of a criminal, or one who absent incarceration, would pose a threat, or be a menace to society.

In sum, Mr. Richardson's entire life, in part by his own misguided volition, is largely ruined and will never be the same.  As a result of this case, he will never work again in college basketball and will be saddled with a felony conviction thereby vastly limiting his professional opportunities in any capacity.  Certainly this punishment alone would arguably be sufficient. In short, there is absolutely no risk of recidivism here, and there is nothing to suggest that the public needs to be protected from Mr. Richardson.

## CONCLUSION

Mr.  Richardson is asking for the Court's mercy and leniency. As a result of his conviction, Mr. Richardson's lengthy, successful and fulfilling career as a college basketball coach is over. He was fired by the University of Arizona in January of 2018 and has had very little income since then. As a result of his September 25th, 2017 arrest, he has been unemployed and entirely reliant upon his wife, friends and limited savings for support. Throughout this ordeal, including the present, Mr. Richardson has resided in Tucson with his teenage son, Emanuel Richardson, Jr and has focused on his parental obligations and using the downtime to improve as a person.

The consequence of his admittedly foolish decisions have left his reputation in tatters and even impacted his direct family, including his wife, a cancer survivor who moved back to New York City to take a job as a receptionist to help support the family and provide health insurance benefits for the family. Mr. Richardson by virtue of being the highest profile assistant at the most prominent school has become the face of this scandal.  In short, the consequences of this case have rendered Mr. Richardson a relative pariah in the world of college basketball.   It has further left Mr. Richardson financially destitute with a clouded future.  Certainly much punishment has already been inflicted upon Mr. Richardson and the entire Richardson family.

No term of imprisonment is necessary to deter Mr. Richardson from committing crimes similar to those charged in this case, nor is a term of imprisonment necessary to achieve a just punishment for his actions, which he resides with daily.   By all accounts Mr. Richardson was a humble and good person before he made this mistake and he remains a humble and good person today.

A probationary sentence would not be a substantial deviation from the 3-month Guidelines recommendation by Pretrial Services. However, notwithstanding this recommendation, a probationary sentence fully accords with Mr. Richardson's individual characteristics and circumstances, the offense at issue, and the goals of sentencing that govern the Court's sentencing decision.

For the foregoing reasons, we respectfully request that the Court impose a probationary sentence, which is "sufficient, but not greater than necessary" to achieve the statutory purposes of sentencing.

14

**RESPECTFULLY SUBMITTED:**

**Mordock Barber, LLC**
<u>Craig J. Mordock</u>
7611 Maple Street
New Orleans, LA 70118
(504) 304-2335

*Attorneys for Defendant Emanuel Richardson*